LODGED
RECEIVED ___ COPY

APR 0 2 2019

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

SEALED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-0352-PHX-SPL (MHB) |
| Plaintiff, | **I N D I C T M E N T** |
| vs. | **VIO:**  18 U.S.C. § 371 |
| | (Conspiracy to Commit Bank Fraud) |
| 1. Joseph Menaged, and | Count 1 |
| (Counts 1-7) | |
| | 18 U.S.C. § 1344(1) |
| 2. Stephen Brown; | (Bank Fraud) |
| (Counts 1-3) | Counts 2-3 |
| | 18 U.S.C. § 1957 |
| Defendants. | (Transactional Money Laundering) |
| | Counts 4-7 |
| | 18 U.S.C. §§ 981 and 982, |
| | 21 U.S.C. § 853, and |
| | 28 U.S.C. § 2461(c) |
| | (Forfeiture Allegation) |

THE GRAND JURY CHARGES:

## BACKGROUND

**A.** **Introduction**

1.      Joseph Menaged ("Defendant Menaged"), a resident of Miami, Florida, received money from a number of Arizona businesses and entities that were operated by his son Y.S.M.

2.      Stephen Brown ("Defendant Brown"), a resident of Cedarhurst, New York, is Defendant Menaged's longtime accountant.

3.      Y.S.M, who lived and worked in the Phoenix metropolitan area from at least

2008 through 2017, was a real estate investor who purchased foreclosed properties and rehabilitated and sold the properties for a profit. Y.S.M. conducted business through a number of companies including, amongst others, Easy Investments, LLC ("Easy Investments") and Arizona Home Foreclosures, LLC ("AHF"). Y.S.M., through Easy Investments and AHF, obtained hard money loans from lenders including DENSCO Investment Corporation ("DENSCO") to purchase real estate. Between January 2013 and June 2016, Y.S.M. obtained approximately 2,712 loans from DENSCO totaling approximately $734,484,440.67.

4.     Between 2011 and 2017, Y.S.M. transferred, via checks and electronic transfers, approximately $11,459,084.00 to Defendant Menaged.

5.     Y.S.M frequently utilized, among others, Easy Investment's Bank of America ("BoA") account ending in #5496, and AHF's JP Morgan Chase account ending in #1151 to make transfers to accounts owned and controlled by Defendant Menaged.

6.     Defendant Menaged frequently utilized, among others, BoA account ending in #0078 in the name of Short Term Finance, LLC; a personal BoA account ending in #0731, and a personal Bank United account ending #0927 to receive transfers from Y.S.M.

B.     **Purchase and Financing of New York Property**

7.     On or about June 1, 2012, Defendant Menaged entered into a purchase agreement with Extell West 57th Street, LLC for the purchase of Unit 42C at 157 West 57th Street, New York, New York ("Unit 42C"). The terms of the agreement included a purchase price of $3,225,120.00, payable as follows: a) initial deposit of $651,024.00 due at signing; b) a deposit of $162,756.00 due on December 1, 2012; and c) balance of $2,441,340.00 due at closing.

8.     On or about March 30, 2015, Defendant Menaged obtained a mortgage from Bank United in the amount of $2,278,584.00 associated with Unit 42C. On the loan application, Defendant Menaged indicated he was self-employed as a real estate consultant/investor and had a monthly income of approximately $60,409.00. Monthly electronic mortgage payments for $9,003.16 from Defendant Menaged's Bank United

1  account ending #0927 began in approximately May 2015.

2  **C.     Purchase and Financing of Miami Properties**

3       9.       On or about March 22, 2013, Defendant Menaged entered into a purchase

4  agreement with Tower 3315, LLC for the purchase of Unit 9D at 3315 Collins Avenue in

5  Miami Beach, Florida ("Unit 9D").  The terms of the agreement included a purchase price

6  of $2,600,000.00, payable as follows: a) a reservation deposit of $260,000.00; b) initial

7  deposit of $260,000.00 due at signing; c) a deposit of $260,000.00 due no later than 5 days

8  following notice of pouring of the ground floor slab; and d) balance of $1,820,000.00 due

9  at closing.

10       10.      On or about April 11, 2013, Defendant Menaged entered into a purchase

11  agreement with Tower 3315, LLC for the purchase of Unit 9C at 3315 Collins Avenue in

12  Miami Beach, Florida ("Unit 9C").  The terms of the agreement included a purchase price

13  of $5,000,000.00, payable as follows: a) initial deposit of $500,000.00 due at signing; b) a

14  deposit of $500,000.00 due no later than 5 days following notice of pouring of the ground

15  floor slab; and c) balance of $4,000,000.00 due at closing.

16       11.      On or about September 17, 2015, Defendant Menaged was approved for a

17  $3,000,000.00 mortgage with Morgan Stanley Private Bank ("Morgan Stanley") associated

18  with Unit 9C.  On the loan application, Defendant Menaged indicated he was self-

19  employed and had a monthly income of approximately $70,250.00.  Monthly electronic

20  mortgage payments for $11,760.26 from Defendant Menaged's Bank United account

21  ending #0927 began in approximately November 2015.

22       12.      On or about September 18, 2015, Defendant Menaged was approved for a

23  $1,300,000.00 mortgage with Bank United associated with Unit 9D.  On the loan

24  application, Defendant Menaged indicated he was self-employed with AHF for eight years

25  and had a monthly income of approximately $102,429.00.  Monthly electronic mortgage

26  payments for $5,747.25 from Defendant Menaged's Bank United account ending #0927

27  began in approximately November 2015.

28       13.      After closing on Units 9C and 9D, Defendant Menaged combined the units

1   into a single residence.

2        14.    Prior to obtaining mortgages from Bank United and Morgan Stanley in 2015,

3   between 2013 and 2015, Defendant Menaged, with the assistance of Defendant Brown and

4   others, unsuccessfully applied to obtain mortgages for the three properties at, among others,

5   PNC Bank, JP Morgan Chase Bank, and Citibank, N.A.

## COUNT 1
### Conspiracy to Commit Bank Fraud
### [18 U.S.C. § 371]

8        15.    The factual allegations in paragraphs 1 through 14 of the Indictment are

9   incorporated by reference and re-alleged as though fully set forth herein.

10       16.    From in or around June 2012 through September 2015, the exact date being

11  unknown to the Grand Jury, in the District of Arizona and elsewhere, Defendants JOSEPH

12  MENAGED and STEPHEN BROWN, did unlawfully, voluntarily, intentionally, and

13  knowingly conspire, combine, confederate, and agree together and with each other, and

14  with other individuals, both known and unknown to the Grand Jury, to commit bank fraud.

15  Specifically, MENAGED and BROWN did knowingly execute and attempt to execute a

16  scheme or artifice to defraud and to obtain money, funds, credits, and assets, by and under

17  the custody and control of JPMorgan Chase, Citibank, N.A, PNC Bank, Bank United, and

18  Morgan Stanley, all federally insured financial institutions as defined under Title 18,

19  United States Code Section 20, by means of materially false and fraudulent pretenses,

20  representations, and promises in violation of Title 18, United States Code, Section 1344.

21  **MANNER AND MEANS OF CONSPIRACY AND SCHEME**

22       17.    Among the manner and means by which MENAGED and BROWN and their

23  co-conspirators carried out the conspiracy were the following:

24            a.      MENAGED, BROWN, and others created and backdated fraudulent

25  documents purporting to establish that MENAGED made loans to Y.S.M., Easy

26  Investments, and AHF to explain money transferred from Y.S.M to MENAGED.

27            b.      MENAGED, BROWN, and others created and backdated fraudulent

28  records purporting to establish ongoing business dealings between Easy Investments, AHF,

1    and MENAGED.

2              c.      MENAGED, BROWN, and others created fabricated tax forms to

3    create the appearance that MENAGED earned income.

4              d.      MENAGED, BROWN, and others compiled and created material

5    false business records to substantiate deposits into MENAGED's bank accounts.

6              e.      MENAGED, BROWN, and others prepared materially false letters of

7    explanation in response to inquiries from financial institutions.

8                                      **OVERT ACTS**

9              18.     In furtherance of the conspiracy, and to affect the objects and purposes

10   thereof, the following overt acts, among others, occurred within the District of Arizona,

11   and elsewhere.

12             a.      On or between May 13 and June 24, 2014, MENAGED, BROWN,

13   and others prepared and executed documents titled "Promissory Note," all of which were

14   backdated December 1, 2011.  Notarized versions of the Promissory Note also indicated

15   that the documents were executed on December 1, 2011, when in fact, they were created

16   and signed in 2014.

17             b.      On or between August 14-21, 2014, MENAGED, BROWN, and

18   others compiled information related to properties sold by Y.S.M and his entities to

19   substantiate false claims of income to MENAGED.

20             c.      On or about August 19, 2014, MENAGED, BROWN, and others

21   prepared and executed a document titled "Consignment Sales Agreement" dated December

22   18, 2013 to substantiate false claims of income to MENAGED.

23             d.      On or about August 25, 2014, BROWN prepared and provided

24   MENAGED with a false Income Verification Letter.

25             e.      On or about September 9, 2014, BROWN prepared and filed Forms

26   1040, Individual Income Tax Return for tax years 2012 and 2013 on behalf of MENAGED

27   listing false sources of income and assets.

28             f.      On or about December 4, 2014, BROWN, MENAGED and others prepared

and executed letters addressed to the bank to falsely substantiate transfers of funds from Y.S.M to MENAGED.

g.      On or between January 5 and February 9, 2015, at the direction of BROWN, Y.S.M created fictitious Internal Revenue Forms 1099INT and 1099MISC on behalf of MENAGED.

h.      On or about January 12, 2015, BROWN prepared and provided Y.S.M. and others language to execute a letter from AHF in response to a specific inquiry from the financial institution.

i.      On or about May 11, 2015, BROWN prepared and filed Form 1040, Individual Income Tax Return for tax year 2014 on behalf of MENAGED listing false sources of income and assets.

j.      On or about June 12, 2015, BROWN prepared and provided MENAGED with multiple formats of an "Income Letter" to provide as verification to financial institutions when requested.

k.      On or between June 21 and July 21, 2015, BROWN prepared and provided MENAGED, Y.S.M., and others with draft letters to finalize documentation on AHF letterhead to substantiate false claims of income to MENAGED.

All in violation of Title 18, United States Code, Section 371.

**COUNT 2**
**Bank Fraud**
**[18 U.S.C. § 1344(1)]**

19.      Paragraphs 1 to 18 are realleged and incorporated by reference as though fully set forth herein.

20.      From in or around June 2012 to in or around September 2015, the exact dated being unknown to the Grand Jury, in the District of Arizona and elsewhere, Defendants JOSEPH MENAGED and STEPHEN BROWN, and others both known and unknown to the Grand Jury, knowingly executed a scheme to obtain the money, funds, and other property owned by and under the control of Bank United, then insured by the Federal Deposit Insurance Corporation, by means of material false and fraudulent pretenses,

representation and promised as detailed in Count 1 of the Indictment, and including in or around January 2015, by providing a fraudulent document title "Promissory Note," with the intent to defraud Bank United and obtain property.

All in violation of Title 18, United States Code, Section 1344(1).

### COUNT 3
### Bank Fraud
### [18 U.S.C. § 1344(1)]

21.     Paragraphs 1 to 20 are realleged and incorporated by reference as though fully set forth herein.

22.     From in or around June 2012 to in or around September 2015, the exact dates being unknown to the Grand Jury, in the District of Arizona and elsewhere, Defendants JOSEPH MENAGED and STEPHEN BROWN, and others both known and unknown to the Grand Jury, knowingly executed a scheme to obtain the money, funds, and other property owned by and under the control of Morgan Stanley, then insured by the Federal Deposit Insurance Corporation, by means of material false and fraudulent pretenses, representation and promised as detailed in Count 1 of the Indictment, and including in or around January 2015, by providing a fraudulent document title "Promissory Note," with the intent to defraud Morgan Stanley and obtain property.

All in violation of Title 18, United States Code, Section 1344(1).

### COUNT 4-7
### Transactional Money Laundering
### [18 U.S.C. § 1957]

23.   The factual allegations in paragraphs 1 through 22 of the Indictment are incorporated by reference and re-alleged as through fully set forth herein.

24.   On or about the dates set forth below, in the District of Arizona, and elsewhere, Defendant JOSEPH MENAGED, and others both known and unknown to the Grand Jury, did knowingly engage and attempt to engage in the following monetary transactions through or to a financial institution, affecting interstate or foreign commerce, and within the United States, in criminally derived property of a value greater than $10,000, that is, the electronic transfer of funds, such property having been derived from a specified

unlawful activity, that is, wire fraud, each transaction representing a separate count:

| COUNT | DATE | MONETARY TRANSACTION |
|-------|------|----------------------|
| 4 | 3/27/15 | Wire transfer for $262,000 from Bank United account ending #0927 for Unit 42C, New York, NY |
| 5 | 9/17/15 | Wire transfer for $1,013,974.86 from Bank United account ending #0927 for Unit 9C, Miami Beach, FL |
| 6 | 9/18/15 | Wire transfer for $452,052.08 from Bank United account ending #0927 for Unit 9D, Miami Beach, FL |
| 7 | 9/21/15 | Wire transfer for $13,000.00 from Bank United account ending #0927 for Unit 9D, Miami Beach, FL |

All in violation of Title 18, United States Code, Section 1957.

**FORFEITURE ALLEGATION**

25.     The Grand Jury realleges and incorporates the allegations of Counts 1 through 7 of this Indictment, which are incorporated by reference as though fully set forth herein.

26.     Pursuant to Title 18, United States Code, Sections 981 and 982, Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c), and upon conviction of one or more of the offenses alleged in Counts 1 through 7 of this Indictment, the Defendant(s) shall forfeit to the United States all right, title, and interest in any and all property, real or personal, involved in such offense(s), or any property traceable to such property involved in the offense(s), or conspiracy to commit such offense(s), including the following:  (a) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of a statute listed in Title 18, United States Code, Section 982, (b) all other property constituting proceeds obtained as a result of those violations, and (c) all property used in any manner or part  to commit or to facilitate the commission of those violations including, but not limited to the sum of money representing the amount of money involved in the offense(s) and the property

1  named below.

2       Real property located at:

3          (1) 157 W 57th St., Unit 42C, New York, New York 10019; and

4          (2) 3315 Collins Ave., Unit 9C/9D, Miami Beach, FL 33140

5       A sum of money equal to at least $11,459,084.00 in United States currency,

6  representing the amount of money involved in the offense(s).

7       27.    If any of the above-described forfeitable property, as a result of any act or

8  omission of the Defendant(s):

9          (1) cannot be located upon the exercise of due diligence,

10          (2) has been transferred or sold to, or deposited with, a third party,

11          (3) has been placed beyond the jurisdiction of the court,

12          (4) has been substantially diminished in value, or

13          (5) has been commingled with other property which cannot be divided

14  without difficulty, it is the intent of the United States to seek forfeiture of any other property

15  of said Defendant(s) up to the value of the above-described forfeitable property, pursuant

16  to Title 21, United States Code, Section 853(p).

17       All in accordance with Title 18, United States Code, Sections 981 and 982, Title 21,

18  United States Code, Section 853, Title 28, United States Code, Section 2461(c), and Rule

19  32.2, Federal Rules of Criminal Procedure.

20                 A TRUE BILL

21

22                 *s/*

23                 FOREPERSON OF THE GRAND JURY
               Date:  April 2, 2019

24  ELIZABETH A. STRANGE
  First Assistant United States Attorney

25  District of Arizona

26  *s/*

27  MONICA EDELSTEIN
  Assistant U.S. Attorney

28